IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| **RICHARD LAMAR BURKHART** | : | |
| Debtor | : | Case No. 05-28300 (JKF) |

## MEMORANDUM OPINION

This matter is before the court on the Joint Motion of Interim Capital ("Interim") and Christine C. Shubert, Chapter 7 Trustee, for Approval of Stipulation Regarding Release of Funds (the "Motion"). For reasons discussed in open court at the hearing on the Motion on November 7, 2006 and in the Order memorializing that hearing, the Motion is granted but only if and to the extent that it ultimately is determined Interim is entitled to the funds. The purpose of this Memorandum is to address the arguments and related motions raised by the Debtor at and subsequent to the November 7th hearing.

Richard Lamar Burkhart (the "Debtor") filed for protection under Chapter 7 of the Bankruptcy Code on October 14, 2005. The Debtor's Schedule A lists his residence at 360 Watersedge Drive in Lancaster, Pennsylvania (the "Property"). On May 24, 2006, and pursuant to an Order of this court, the Property was sold and, after payment of expense and certain secured claims, $175,619 was left from the sale. By order of the court, these funds have been held in an interest bearing account by the Trustee since that time and are currently worth approximately $176,052 (the "Sale Proceeds").

Interim Capital is successor-in-interest to a judgment against the Debtor and in favor of Citizens Bank of Pennsylvania entered on July 8, 2005 in the amount of $1,562,155 plus accrued and accruing interest (the "Judgment"), which Judgment is a lien against the Property and against other property of the Debtor and/or the estate.

The Trustee and Interim reached an agreement providing for release of a portion of the Sale Proceeds currently being held by the Trustee to Interim in exchange for a carveout for the estate. This agreement is codified in a Stipulation, which the Trustee and Interim sought to have approved by the Court via the Motion. The Stipulation calls for the release of the Sale Proceeds to Interim, less a carveout of $34,800 for the benefit of the estate. In exchange, the Trustee agrees to waive any claims against Interim that the estate may have under 11 U.S.C. §506(c) and the interest accruing on the Judgment would be marginally reduced.

The Debtor filed an "Answer" to the Trustee and Interim's Stipulation on September 26, 2006, denying what the Debtor saw to be allegations contained in the Motion and asserting "Affirmative Defenses." Paragraphs 3 through 6 of Debtor's Affirmative Defense state, in relevant portion:

> Trustee is not holding the proceeds as Property of Debtor's, but only as the Custodian of the funds pending the resolution of an issue as to whether Interim Capital must liquidate or otherwise "marshal" its security on a commercial property at 1590 Manheim Pike by selling or otherwise valuing that premises which is held in equal shares as Tenants in Partnership by Debtor and his parents, before the funds placed in escrow are distributed… in the event the Joint Stipulation is approved without either the Trustee abandoning or Interim Capital "marshaling" the Manheim pike property, Trustee would potentially receive a "windfall" by receiving Debtor's partnership share if and when the Manheim Pike commercial property is sold.

The Debtor's subsequent pleadings related to this matter make similar arguments. On October 19, 2006, the Debtor filed two pleadings: a Motion for an Expedited Hearing and to Limit Notice and a Motion for Temporary and Preliminary Injunction. The former motion seeks an expedited hearing on the later motion. The Motion for Temporary and Preliminary Injunction (the "Motion for Injunction") argues that the Stipulation by the Trustee and Interim is "an attempt to circumvent the rights and protections of the Pennsylvania Deficiency Judgment Act (the "DJA") given to Debtor by depriving him of his rights and benefits of the Fair Market Value in the Manheim Pike Premises prior to exercising its rights against him as Guarantor." (Mtn, ¶13). The Motion for Injunction asks the Court to enjoin Interim from both proceeding against the Sale Proceeds until Interim establishes a deficiency judgment under the DJA and from proceeding with the Stipulation. The Motion for Injunction also asks the Court to prohibit Interim from pursuing the Debtor for any deficiency without first complying with the DJA.

On October 23, 2006, the Debtor's Motion for Injunction was denied without prejudice by this Court, as injunctions must be sought by means of an adversary proceeding. On October 31, 2006, the Debtor and his spouse filed an adversary proceeding (06-02276) seeking injunctive relief. On November 1, 2006, the Debtor filed a "Motion for Continuance of Hearing Scheduled for November 7, 2006 on the Joint Motion Filed by Interim Capital LLC and Christian C. Shubert, Chapter 7 Trustee, for Approval of Stipulation Regarding Release of Funds" (the "Motion for Continuance"). The Motion for Continuance asks for the hearing on the Motion regarding the Joint Stipulation to be continued "indefinitely" due to the fact that the Debtor and his wife are

3

currently residing in California (due to their work) and cannot easily afford to travel back to Pennsylvania to participate in hearings.  (Mtn. Pg.3).

Because this was the Debtor's second request for a continuance, the Court was willing to hear from him telephonically and because it was apparent that a final resolution of the Stipulation was unlikely at this time, the Court determined to proceed with the hearing in order to hear from counsel on the issues.  The hearing on the Motion was lengthy and the Court heard and considered arguments from the Trustee and her counsel, Interim's counsel, and Debtor's counsel.  For reasons stated and discussed on the record - primarily to avoid the loss of the carveout and because, since money is fungible, the Court was able to authorize the release of the funds while still reserving and protecting all of Debtor's arguments about and possible rights in the Sale Proceeds - the Court approved the Stipulation agreed to by the Trustee and Interim, if and only to the extent it is later determined that the Sale Proceeds properly belong to Interim and that the DJA is in no way violated by the distribution of these funds.  The Court made clear that, pursuant to the Debtor's objections, it was expressly not determining that the Sale Proceeds were owed to Interim.  Such a determination is left for a later date, to be made in connection with the sale of the Manheim Pike property and any DJA action necessary in connection with that sale.

Following the November 7th hearing, the Debtor's counsel continues to argue both that the Debtor's rights are being violated by the Stipulation and that he does not "recall ever receiving Notice of the Grant or Denial of my Motion for Expedition or a ruling on my Motion for a Continuance." (Letter to the Trustee, dated November 10, 2006).

To the extent that the Court has not explicitly ruled on the Debtor's Motion for an Expedited Hearing and to Limit Notice and Motion for Continuance of Hearing Scheduled for November 7, 2006, they are hereby both denied for several reasons. First, the Motions ask for contradictory relief. One asks for immediate attention to this matter; the other asks for the hearing on the subject to be postponed "indefinitely." (Mtn for Continuance, pg.3). Second, neither the Motion for an Expedited Hearing nor the Motion for Continuance states colorable grounds for relief. There is no longer a need for an expedited hearing on Debtor's Motion for Injunction, as that Motion was considered (and denied) by the Court by virtue of its ruling on November 7, 2006.

The Motion for Continuance states that the Debtor will be prejudiced due to the fact that he was unable personally to participate in the November 7th hearing in Pennsylvania. The Court finds this argument unpersuasive. The Debtor was ably represented by the counsel of his choice at that hearing, there was no need for testimony, and the Debtor was authorized to participate telephonically in the hearing. The Debtor was thus allowed to make any and all arguments against the Stipulation, and he cannot credibly now assert that he was prejudiced by his being in California at the time of the hearing on the Motion. Neither does the fact that the Court may not have explicitly denied each Motion of the Debtor prior to ruling on the Motion for entry of the Stipulation mean that the Debtor did not receive a fair hearing. The record makes clear that the Court heard and considered all arguments prior to ruling on this matter.

As explained at length during the hearing on November 7th, in provisionally granting the Motion and approving the Stipulation, the Court ensured that the Sale Proceeds will end up with their rightful owner following a subsequent determination of

5

who that is.  Until then, it is important to preserve for the benefit of the estate the $34,800 carveout that the Stipulation sets aside.  It is the bankruptcy court's "mandate to protect property of the estate for the benefit of creditors."  In re Nat'l Cattle Congress, Inc., 179 B.R. 588, 599 (Bankr. N.D. Iowa 1995).  See also In re Keul, 76 B.R. 79, 82 (Bankr. E.D. Pa. 1987) ("courts are empowered, by virtue of section 105(a), to… protect property of the estate when warranted").  Allowing the Debtor to postpone or otherwise threaten such provisional approval of the Stipulation reached by Interim and the Trustee could well have cost the estate valuable dollars.  Preventing such a loss to the estate, and preserving the $34,800 carveout which benefits the estate, was reason alone for the Court to approve the Stipulation at this time, especially as Interim stipulated on the record that it would be prepared to return the funds upon order of the Court or, indeed, if the Judgment was satisfied by a sale of other property subject to its judgment lien.

     Furthermore, the Debtor is not prejudiced by the decision of the Court both because, as discussed, ownership of the Sale Proceeds remains subject to a final determination and because the Sale Proceeds themselves are money, which is freely exchangeable and entirely replaceable.  See Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 176 (3d Cir. 2002) ("[l]egally as well as economically, money is fungible") (internal citations and quotations omitted).  Debtor cannot therefore argue that he is prejudiced when the asset he seeks - cash - can readily be returned to him, if it is later determined that the funds in question are properly due to him.  The Court's November 7th ruling in no way prejudices the Debtor's right to seek the Sale Proceeds or diminishes the funds themselves.  Rather, the decision of the Court merely

preserves the carveout in the Stipulation for the benefit of the estate, while reserving for another day the knotty question of to whom the Sale Proceeds belong.

What is more, the Debtor's central objection to the Stipulation - that it violates the DJA by "depriving him of his rights and benefits of the Fair Market Value in the Manheim Pike Premises" is not justiciable at this time because the Manheim Pike property has not yet been sold. (Motion for Injunction, ¶13). The Pennsylvania DJA states that "[w]henever any real property is *sold*… to the judgment creditor in execution proceedings and the price for which such property *has been sold* is not sufficient to satisfy the amount of the judgment… the judgment creditor seeks to collect the balance due on said judgment… the judgment creditor shall petition the court to fix the fair market value of the real property *sold*." 42 Pa.C.S. §8103(a) (emphasis added). See also In re Zinchiak, 406 F.3d 214, 221 n.5 (3d Cir. 2005) ("The provisions of the DJA protect judgment debtors whose real estate is *sold* in execution") (citation omitted and emphasis added). Therefore, the Debtor cannot state a claim at this time under the DJA regarding the Manheim Property because this property has not been sold, much less been sold to the judgment creditor. Any relief sought by the Debtor in connection with such a cause of action is thus not ripe for adjudication. See Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 300 n.15 (3d Cir. 2000) ("The function of the ripeness doctrine is to prevent federal courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"). The fact that the Debtor's fundamental objection presents an unripe controversy is yet another reason that the Court was able to find that the provisional approval of the Stipulation between

Interim and the Trustee was in the best interest of the estate despite the Debtor's protests to the contrary.

## Conclusion

For the reasons stated in this Memorandum Opinion and in open court at the hearing on the Joint Motion of Interim and the Trustee for Approval of Stipulation Regarding Release of Funds, and in the Order accompanying the November 7, 2006 hearing, the Motion is provisionally granted. Debtor's Motions for Expedited Hearing and to Limit Notice and for Continuance of Hearing Scheduled for November 7, 2006 are both denied.

Dated: November 17, 2006

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| **R**ICHARD **L**AMAR **B**URKHART | : | |
| Debtor | : | Case No. 05-28300 (JKF) |

..................................................

**ORDER**

..................................................

This 17th day of November, 2006, after a hearing being held on the Joint Motion of Interim Capital and Christine C. Shubert, Chapter 7 Trustee, for Approval of Stipulation Regarding Release of Funds (the "Motion"), Debtor's Motion for Continuance of Hearing Scheduled for November 7, 2006 on the Motion, and the Debtor's Motions for Expedited Hearing and for a Continuance of Hearing, and after notice and hearing,

It is hereby **ORDERED** that all funds currently being held in escrow by the Trustee from the sale of the Debtor's property located at 360 Waters Edge Drive, Lancaster, Pennsylvania shall be immediately released by the Trustee ("Turnover Funds") to Interim Capital, LLC ("Interim") except that the sum of $34,800.00 shall be retained by the Trustee for the benefit of the Estate ("Carveout Funds") as set forth in the Joint Stipulation dated September 11, 2006 presented to this Court;

It is further **ORDERED** that should the commercial property located at 1590 Manheim Pike, Lancaster, Pennsylvania the ("Manheim Pike Property") be sold at sheriff's sale, and should the requirements set forth by the Pennsylvania Deficiency

Judgment Act be applicable to the sale, then Interim shall file a motion to determine the fair market value of the Manheim Pike Property, and there will be a determination made by the Court as to the Manheim Pike Property's fair market value; and

It is further **ORDERED** that should the fair market value of the Manheim Pike Property be determined at said hearing to be in excess of the net amount remaining on Interim's claim after the application of the Turnover Funds, that Interim shall, pursuant to order of this Court, return the excess funds, with interest, to the Trustee and such excess funds and the Carveout Funds shall be retained by the Trustee and not be distributed until further order of this Court.

Debtor's Motions for an Expedited Hearing and to Limit Notice and for a Continuance of Hearing Scheduled for November 7, 2006 are **DENIED**.

_____
HONORABLE JEAN K. FITZSIMON
United States Bankruptcy Judge

Copies to:

Jacques H. Geisenberger, Jr., Esquire
Geisenberger Cooper & Lanza
941 Wheatland Avenue, Suite 201
Lancaster, PA 17603-3180

Camille Spinale, Esquire
Maschmeyer Karalis P.C.
1900 Spruce Street
Philadelphia, PA 19103-6697

Phillip D. Berger, Esquire
Lundy, Flitter, Beldecos & Berger, P.C.
450 North Narberth Avenue
Narberth, PA 19072-1898